[No. 24868-5-I.    Division One.    September 16, 1991.]

*In the Matter of the Marriage of* KATHLEEN J. VANDER VEEN, *Respondent, and* JERALD VANDER VEEN, *Appellant.*

862

*John M. Meyer* and *Gilbert & Meyer, Inc. P.S.; Douglass A. North* and *Maltman, Weber, Reed, North & Ahrens,* for appellant.

*Bradford E. Furlong* and *Johnson & Furlong,* for respondent.

GROSSE, C.J. — Jerald Vander Veen appeals a decree of dissolution challenging the trial court's decision concerning maintenance and child support. We affirm in part and reverse in part.

Jerald and Kathleen Vander Veen (hereinafter Jerald and Kathleen) were married in Mount Vernon on November 19, 1971. There were five children born of the marriage.[1] In 1980, Jerald and Kathleen began operating a dairy farm. Jerald was principally responsible for managing and operating the farm. Kathleen had not worked outside of the family farm since the birth of their first child and was principally involved in raising the children.

On August 22, 1988, Kathleen filed a petition for dissolution. A trial was held January 24 through 27, 1989.[2] The trial court issued its oral opinion in March of 1989. After a series of motions for reconsideration the marriage was dissolved in August of 1989. The trial court ordered Jerald to pay $1,937 per month in child support for their five children; the tuition costs for each child at Mount Vernon Christian School in the same proportion as his basic child support obligation until each child completed the eighth grade; maintenance in the amount of $300 per month for 30 months; and $1,000 per month for 36 months as part of the property settlement. The decree provides that the basic child support obligation shall be automatically adjusted pursuant to the child support guidelines commencing the month following the 12th birthday of each child. The decree further provides that the maintenance award shall be eliminated upon a showing that Kathleen is fully employed. This appeal followed.

## CHILD SUPPORT

Jerald contends that his monthly child support obligation should be $1,433.85 rather than the $1,937 per

---

[1] Calvin was born December 31, 1975; Matthew was born September 11, 1977; Andrew was born December 26, 1980; Leslie was born May 26, 1982; and Kari was born December 28, 1983.

[2] Prior to trial, the parties reached a property settlement agreement which was later approved by the court.

month which the trial court ordered him to pay. He contends that the trial court erred in calculating the monthly child support obligation using the economic table from the state child support guidelines rather than using the alternative economic table adopted by the Skagit County Superior Court. The Skagit County Superior Court economic table was adopted after the trial but prior to the trial court's oral opinion and entry of the findings and conclusions.

■ Generally, child support shall be determined and ordered according to the state child support schedule. Former RCW 26.19.020. However,

[i]f approved by a majority vote of the superior court judges of a county, the superior court may adopt by local court rule an economic table that *shall* be used by the superior court of that county, instead of the economic table adopted by the commission, to determine the appropriate amount of child support. . . .

(Italics ours.) Former RCW 26.19.020(1)(b).

The Skagit County Superior Court adopted an alternative economic table, pursuant to former RCW 26.19-.020(1)(b), which became effective February 1, 1989. Thus, although the alternative table became effective after the trial it was in effect prior to the date that the decree of dissolution was entered. Given the mandatory language of former RCW 26.19.020(1)(b) the trial court should have used the economic table adopted by the Skagit County Superior Court. In addition to monthly child support, the decree of dissolution orders Jerald to contribute a percentage of the private educational expenses of the children. Conclusion of law 6 provides in relevant part that "[Jerald Vander Veen] shall pay the Mount Vernon Christian School tuition for each child through the 8th grade in the same percentage as his basic support obligation[.]" The trial court based its conclusion on the following findings of fact:

6. The respondent and petitioner are members of the Mount Vernon Christian Reformed Church. The family has

been very involved in this church and the values of the church play an important role in the fabric of this family.

7. Four of the children have attended the Mount Vernon Christian School. The parties agreed at the outset of this marriage that their children would attend the Mount Vernon Christian School through the 8th grade.

8. Attendance at the Mount Vernon Christian School is an integral part of the up-bringing of the children of this marriage. The removal of them from the Mount Vernon Christian School before completion of the 8th grade would be detrimental to the well-being of the children and would detract from the efforts of the parties to raise the children within the framework of their religious beliefs. It would not be detrimental to the well being of the children for them to attend a public school or a school of their choice after the eighth grade. The elder boys have expressed an interest in attending public school.

Jerald Vander Veen does not assign error to findings 6 and 7, therefore they become verities on appeal. *In re P.D.*, 58 Wn. App. 18, 30, 792 P.2d 159 (1990). He does however assign error to finding 8, and argues that it lacks evidentiary support in the record.

■ ■ In Washington, findings of fact will not be disturbed on appeal if they are supported by substantial evidence. *In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807, *review denied*, 115 Wn.2d 1013 (1990). Substantial evidence means evidence in "sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise." *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147, 381 P.2d 605, 96 A.L.R.2d 1193 (1963).

> The amount of child support rests in the sound discretion of the trial court. This court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances.

*Stern*, 57 Wn. App. at 717. It appears that *Stern* was the first case in Washington to address the minor child/private school tuition issue.

■ The *Stern* court stated:

> There is no per se prohibition against the award of private school tuition for a minor child. Factors such as family tradition, religion, and past attendance at a private school, among

others, may present legitimate reasons to award private school tuition expenses in favor of the custodial parent.

*Stern*, 57 Wn. App. at 720. However, the trial court's findings in *Stern* failed to address such circumstances and there was no showing of special circumstances justifying the need for private school education. *Stern*, 57 Wn. App. at 720. Since there was no substantial evidence supporting the trial court's award, the *Stern* court held that the trial court had exceeded the limits of its discretion by requiring the noncustodial parent to pay for the private education of his minor children.

In the instant case, unlike in *Stern*, the trial court's findings do address these factors and there was substantial evidence supporting the trial court's award. First, there was substantial evidence presented that attending Christian schools was a family tradition. Both Jerald and Kathleen had attended Christian schools. Moreover, it is undisputed that the parties agreed at the outset of their marriage that their children would attend the Mount Vernon Christian School through the eighth grade. Second, there was substantial evidence that the family religion is closely interwoven with the children's education. The Mount Vernon Christian School teaches fundamental Christian values of the Christian Church, of which each member of the Vander Veen family is a baptized member. Third, the Vander Veen children had always attended Christian school.

Moreover, unlike in *Stern*, there was evidence presented in the instant case of special circumstances justifying the need for private school education. There was evidence presented that during the Vander Veens' separation two of the children were not doing well in school. The Vander Veens' 11-year-old son was sucking his thumb and daydreaming in school. The principal at Mount Vernon Christian School testified that Leslie Vander Veen was so shy that to force her to make new friends at the public school "would be very cruel." Evidence was presented that the Mount Vernon Christian School was

working closely with Leslie and she was making steady progress in reading and contributing in class. Given the facts in the instant case, the trial court did not abuse its discretion by ordering Jerald to pay for private school tuition.

## MAINTENANCE

▆ The award of maintenance is within the trial court's discretion. *In re Marriage of Sheffer*, 60 Wn. App. 51, 53, 802 P.2d 817 (1990). The trial court abuses its discretion when its decision is based upon "untenable grounds or for untenable reasons, considering the purposes of the trial court's discretion." *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990). "The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just." *In re Marriage of Bulicek*, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). The factors set forth in RCW 26.09.090 include the financial resources of each party and the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance, the standard of living during the marriage, and the duration of the marriage, as well as the time needed to acquire the education needed by the spouse seeking maintenance in order to obtain appropriate employment.

The postdissolution economic position of the parties "is a paramount concern in determining issues of property division and maintenance.' " *In re Marriage of Morrow*, 53 Wn. App. 579, 586, 770 P.2d 197 (1989) (quoting *In re Marriage of Washburn*, 101 Wn.2d 168, 181, 677 P.2d 152 (1984)).

In the instant case, Jerald contends that he should not have been ordered to pay maintenance to Kathleen because she has sufficient money from child support and rental income to meet her needs. We disagree. There is substantial evidence in the record which when reviewed in light of the factors in RCW 26.09.090 support the trial court's award.

Pursuant to the property settlement agreement, Kathleen received the family home and another home known as "Greenacres". Greenacres was rental property which was unoccupied at the time of the dissolution and has been sold. Kathleen received approximately $43,000 from Greenacres. In addition, Kathleen received a 1982 Volkswagen Vanagon, one-half of a steer beef, a $1,200 retirement account, savings accounts totaling approximately $9,400, her household goods, stock totaling approximately $88,000,[3] and a property settlement of $36,000 which Jerald is to pay her at $1,000 a month for 36 months.

There was also evidence presented that Kathleen would need to go to school in order to obtain employment. The couple had been married for 17 years and Kathleen had not worked outside the family home for 13 years. Although she did the books for the dairy farm there was testimony that she needed formal training in this field in order to get a job. The court imputed an income to Kathleen of $420 per month.

With respect to Kathleen's financial obligations, her monthly expenses totaled $2,200 which included the mortgage, utility, phone, health care, vehicle maintenance, and food expenses. This did not include clothing expenses, the children's miscellaneous school expenses, or counseling fees for the children.

Jerald received the family dairy farm which had been averaging $1 million per year in gross receipts for 1986 through 1988. His average net pretax income for 1986 through 1988 was $102,000 per year. He also received the farm inventory, feed and supplies, a 1982 Ford truck, two retirement accounts worth approximately $6,000, two checking accounts, a motorcycle, one-half of a steer beef, a copier, the lease on the dairy farm and the lease on a second dairy location, and all the proceeds from the dairy operation.

---

[3]Kathleen was to receive 25 percent of the base amount of the April 1, 1989, certificate, and a 25 percent cash dividend.

Considering the relevant statutory factors in RCW 26.09.090 and their postdissolution status, it cannot be said that the trial court abused its discretion by awarding maintenance to Kathleen in the amount and for the duration provided in the decree.

### ATTORNEY FEES ON APPEAL

■ Kathleen contends that she is entitled to an award of attorney fees and costs on appeal. "In awarding attorney fees on appeal, the court should examine the arguable merit of the issues on appeal and the financial resources of the respective parties." *In re Marriage of Griffin*, 114 Wn.2d 772, 779-80, 791 P.2d 519 (1990) (citing *In re Marriage of Fernau*, 39 Wn. App. 695, 694 P.2d 1092 (1984)). In the instant case, the issues were not frivolous and had arguable merit. With respect to the financial resources of each party, it appears that both parties have sufficient financial resources enabling them to pay for their respective attorney fees.

In conclusion, we reverse the trial court's decision to use the state economic table to calculate child support and remand with instructions to recalculate Jerald Vander Veen's monthly child support obligation using the Skagit County economic table. We affirm the trial court's award with respect to private tuition and maintenance. Each of the parties shall be responsible for his/her own attorney fees.

KENNEDY and AGID, JJ., concur.