[No. 42588-9-I.    Division One.    November 22, 1999.]

*In the Matter of the Paternity of* DANIEL A. HEWITT,· MARK S. NEGRIE, *Appellant,* and KATHI J. KEMPER, *Respondent.*

*Mark S. Negrie,* pro se.

*Mark Anthony Podrasky* of *Podrasky Tweedie Martin,* for respondent.

APPELWICK, J. — Mark Negrie appeals a trial court's child support order. RCW 26.19.080(3) provides that long-distance travel costs "to and from the parents for visitation purposes" must be shared by the parents in the same proportion as the basic child support obligation. Here, we are asked to decide whether this rule applies when the parent, rather than the child, travels back and forth for visitation. Because the parenting plan in this case provides for regular visitation between Negrie and his son, and because the son is too young to travel alone, we hold that the general rule applies in this case. Therefore, the trial court abused its discretion in requiring Negrie to pay more than his proportionate share of the travel expenses. We reverse and remand the order of child support.

## FACTS

Kathi Kemper, a 41-year-old physician and Mark Negrie, a 48-year-old house painter, were in a relationship from March to June 1996. A child, Daniel Hewitt, was born from that union on March 7, 1997.

The parties mediated and agreed to a final parenting plan on March 25, 1998. Under the parenting plan, Daniel resides with Kemper. At the time the parenting plan was finalized, both parties lived in Seattle. But Kemper planned to move to Boston in June 1998, to accept a new position. The parenting plan provides that, once Kemper moves to Boston, Negrie may travel there every six weeks to visit Daniel.

A trial was held March 25-26, 1998, to decide issues of child support. Kemper testified that for the year following

Daniel's birth, she had worked only 60 percent time. In 1996, she earned $55,747 in taxable wages, and in 1997, she earned $55,678. Kemper also testified that she would be making $140,000 per year salary at her new position.

Negrie also worked less than full time. In 1996, he earned $17,607 in wages, and in 1997, he earned $15,710.

Both parties testified regarding their substantial wealth. At the time of trial, Kemper had at least $200,000 in a non-retirement investment account, and at least $186,436 in retirement accounts. Her home was worth $140,000 in equity. Negrie had an IRA account worth $31,645.43, and non-IRA accounts worth over $175,000.

Kemper testified that she planned to continue employing an au pair to care for Daniel once she moved to Boston, at a cost of at least $2,203 per month. She testified that she had decided to employ an au pair due to the special nature of her work and her need to work irregular hours.

In determining the child support award, the trial court drafted two separate child support worksheets. Worksheet A essentially covers the period from Daniel's birth until Kemper's move to Boston on June 30, 1998. Worksheet B covers the period after July 1, 1998. On worksheet A, the court ordered Negrie to pay $463.57 per month in standard child support. On worksheet B, Negrie's monthly obligation is $403.18. The court also ordered Negrie to pay all of the travel expenses he incurs traveling to Boston to visit Daniel. In exchange, the court did not require Negrie to pay his proportional share of the entire day care expense. Negrie was ordered to pay his share of only $1,200 per month of day care expenses.

Negrie had not made any child support payments to Kemper before January 1998. The court ordered him to pay back child support for the period from Daniel's birth in March 1997, to December 1997. The court also ordered Negrie to pay his proportional share of the birthing expenses and back health insurance and medical expenses for Daniel.

Negrie now appeals the child support award. To overturn a child support award, the court must find an

abuse of discretion. *State ex rel. Partlow v. Law*, 39 Wn. App. 173, 178, 692 P.2d 863 (1984). Abuse of judicial discretion occurs only if no reasonable person would take the view adopted by the trial court, or the court exercised its discretion on untenable grounds or for untenable reasons. *Partlow*, 39 Wn. App. at 178. We will not substitute our judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances, nor will we disturb factual findings if supported by substantial evidence. *In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807 (1990).

## LONG-DISTANCE TRAVEL EXPENSES

Negrie argues that the trial court abused its discretion in ordering him to bear the full cost of traveling to Boston to visit his son. The parties' parenting plan provides that Kemper will live in Boston, and Negrie will travel there to visit their son, Daniel. But the parenting plan is silent as to which parent should bear the long-distance travel costs. The court ordered Negrie alone to cover that cost, due to Negrie's substantial investment assets and Kemper's greater responsibility for the day-care costs. We hold that the court abused its discretion in requiring Negrie to pay more than a proportional share of the travel expenses.

In setting an order for child support, the court first determines the couple's combined net incomes. The court uses that figure to calculate the basic child support obligation, according to the child support economic table set forth in RCW 26.19.020. The court then allocates the basic support obligation between the parents "based on each parent's share of the combined monthly net income." RCW 26.19.080(1). This is the standard calculation. RCW 26.19.011(8). The court may then deviate from the standard calculation for the reasons set forth in RCW 26.19.075.

Special expenses, such as day care and "long-distance transportation costs to and from the parents for visitation

purposes," are not included in the basic child support obligation. RCW 26.19.080(3). Nonetheless, "[t]hese expenses shall be shared by the parents in the same proportion as the basic child support obligation." RCW 26.19.080(3). We have held that a trial court *must* apportion travel costs between the parents in the same proportion as the basic support obligation, in a case where the child traveled back and forth between the parents. *See Murphy v. Miller,* 85 Wn. App. 345, 349-50, 932 P.2d 722 (1997). We are now asked to decide whether the same rule applies where, as here, the *parent* must travel back and forth to visit the child because the child is too young to travel.

■ We hold that the general rule requiring apportionment of the long-distance travel expenses applies in this case. Daniel is too young to travel alone. Thus, in order for Negrie to visit with his son, either he must travel to Boston, or Daniel must travel to Washington with a companion. If Daniel travels with a companion, the necessary and reasonable costs of both the child and the companion would be apportioned. RCW 26.19.080(3). Moreover, these costs would likely be higher than if Negrie traveled to Boston to carry out the visitation. Thus, we see no basis for distinguishing the present situation from one in which the child travels to visit the parents.

Kemper argues, nonetheless, that the court had discretion in this case to stray from the general rule requiring that the travel expenses be apportioned. But the court has discretion to determine only whether travel expenses are necessary and reasonable. RCW 26.19.080(4); *Murphy v. Miller,* 85 Wn. App. 345, 349, 932 P.2d 722 (1997). "Once the court determines that the costs are necessary and reasonable, the parties must share them in the same proportion as the basic support obligation." *Murphy,* 85 Wn. App. at 349. It is true that, in a recent case, we upheld a trial court's decision to require one parent to cover the full cost of long-distance travel expenses. *See In re Marriage of Casey,* 88 Wn. App. 662, 668, 967 P.2d 982 (1997). But our holding in that case depended on the fact that the court

had found grounds to deviate from the standard child support calculation. *See Casey,* 88 Wn. App. at 667-68. Here, in contrast, the court did not deviate from the standard calculation. Therefore, the court abused its discretion in requiring Negrie to pay more than his proportional share of the travel expenses.

Finally, Kemper implicitly argues that the trial court abused its discretion in finding that the travel expenses here were necessary. Kemper contends that the expenses are not necessary because Negrie specifically agreed to exercise his residential time in Boston, because he stated that he planned to move to Boston himself, and because he did not raise the issue of his transportation expenses when agreeing to the parenting plan. We reject this argument. Again, the parenting plan provides for Negrie's visitation with Daniel in Boston every six weeks. As long as Negrie remains in Washington, he can visit his son only by traveling to Boston. Negrie did not agree to pay the full amount of his travel expenses. Furthermore, the court could not require Negrie to live in a particular location in order to facilitate his visits with Daniel. *See In re Marriage of Littlefield,* 133 Wn.2d 39, 56, 940 P.2d 1362 (1997) (trial court cannot require parent to live in particular geographic area in order to facilitate contact between parent and child). Logically, then, the court could not condition an award of travel expenses on Negrie's particular residential location. Whether or not Negrie had plans to move to Boston is therefore immaterial.

We remand the child support award, with instructions to the trial court to determine a reasonable cost for travel expenses, and to apportion that cost between the parties in the same proportion as the standard calculation.

A majority of the panel has determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports. The remainder of this opinion will be filed for public record in accord with RCW 2.06.040, it is so ordered.

GROSSE and ELLINGTON, JJ., concur.

After modification, further reconsideration denied January 21, 2000.

Review denied at 141 Wn.2d 1007 (2000).