2013 JUN 10 AM 9: 25
COURT OF APPEALS DIV I
STATE OF WASHINGTON

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Marriage of | NO. 69436-7-I |
| SHELLY P. ALDRIDGE, | DIVISION ONE |
| Respondent, | |
| v. | |
| R. DEAN ALDRIDGE, | UNPUBLISHED OPINION |
| Appellant. | FILED: June 10, 2013 |

LAU, J. — Dean Aldridge appeals an order modifying and increasing his child support obligation. Because undisputed accounting errors underlie the court's calculation of Dean's income and the court's calculation of Dean's income and its deviation from the standard obligation for extraordinary expenses are not supported by adequate findings, we remand for further proceedings.

## FACTS

Dean and Shelly Aldridge divorced in 2007. The dissolution decree required Dean to pay maintenance through January 2012 and $712 in monthly child support for

the Aldridge's child, Brianna. The support order provided that there would be no modification until maintenance ended in 2012.

In July, 2007, Dean married Dr. Brenda Sides, a naturopath. The couple executed prenuptial and separate property agreements providing that all assets acquired before or after marriage by either spouse would be that spouse's separate property. After his divorce, Dean started or participated in several business ventures, including D & B Aldridge Enterprises, which he operated with Dr. Sides.

In August 2011, shortly before the five-year restriction on support modification ended, Dean transferred his interest in D & B Enterprises to Dr. Sides.

In March 2012, Shelly petitioned the court to modify the parenting plan and child support. A court commissioner determined that Shelly had monthly income of $3,750, that Dean was voluntarily underemployed, and that his income should be imputed at $5,153 per month based on his gross income for 2011. These findings resulted in a basic child support obligation of $800. The commissioner then granted Dean a downward deviation based on his residential time with Brianna and ordered a transfer payment of $537. The commissioner allocated educational expenses pro rata and ordered Dean to continue paying all of Brianna's extracurricular expenses.

The superior court revised the commissioner's ruling. The court adopted Shelly's worksheets, which calculated Dean's gross monthly income as $11,049 and Shelly's as $3,750. Dean's monthly income was comprised of $5,153 in personal income and $5,896 in business income. The business income figure was based in part on prior earnings of the business Dean originally owned with Dr. Sides. It is undisputed that

Dean continued to assist Dr. Sides with the business after he transferred his interest in it to her. He claimed, however, that he currently receives no salary.

The court's income calculations resulted in a basic support obligation of $1,336. The child support order described this amount as a "Standard Calculation."

In its memorandum decision, the court expressly did not impute income to Dean but noted that he could be underemployed and that imputation might be necessary in the future. The court also found a basis to deviate upward from the standard calculation:

> [T]he father has a wealthy lifestyle, living in a home of significant value, with expensive vehicles and sporting equipment, etc. and household expenses exceeding $31,000 per month, leading to the inference of substantial resources and/or income in his household.
>
> . . . .
> As stated above, both the resources and the income of a spouse, regardless of a prenuptial agreement, must be considered by the court when considering a deviation. The father requested a deviation downward and the commissioner granted it based on the residential schedule, even though the residential schedule has not changed or not changed very much from what was originally set. Because of that request, I am able to consider the income of Dr. Sides as well; this effectively almost doubles the income in the father's household as a part of the consideration for deviation. RCW 26.19.075(1)(a)(I). The father also has a far greater earning capacity, should he choose to exercise it and continue to develop it than the mother does. See, e.g., In re Marriage of Crosetto, 82 Wn. App. 545 [,918 P.2d 954] (1996); In re Marriage of Glass, 67 Wn. App. 378 [, 835 P.2d 1054] (1992).
> Because of the disparity in earnings, the income and wealth in the father's household, the modest standard of living the mother is able to afford for the child based on her earnings plus the basic child support contribution from the father, and the father's greater earning capacity that he is currently not utilizing, an upward deviation is appropriate in this case.

Memorandum of Decision at 4-7.

The court ordered Dean to pay 100 percent of Brianna's extracurricular expenses as an upward deviation. In its "Reasons for Deviation From Standard Calculation," the

court stated, "Based on the disparity in earnings, the income and possession of wealth in the father's household, the father shall continue to be responsible for Brianna's extracurricular activities as an upward deviation."

The court also ordered Dean to pay $5,000 of Shelly's attorney fees. Dean appeals.

## DECISION

In setting child support, courts must compute the parents' total income, determine the standard support obligation from the economic table, decide whether to deviate from the standard calculation, and allocate the child support obligation to each parent based on his or her share of the combined net income. In re Marriage of Maples, 78 Wn. App. 696, 700, 899 P.2d 1 (1995). We review this process, whether it occurs in the initial action or in a modification proceeding, for abuse of discretion. In re Marriage of Griffin, 114 Wn.2d 772, 776, 791 P.2d 519 (1990); In re Marriage of Scanlon, 109 Wn. App. 167, 174, 34 P.3d 877 (2001). When a superior court revises a commissioner's ruling, we review the superior court's decision, not the commissioner's. In re Marriage of Stewart, 133 Wn. App. 545, 550, 137 P.3d 25 (2006). We review findings of fact for substantial evidence. State ex rel. J.V.G. v. Van Guilder 137 Wn. App. 417, 421-423, 154 P.3d 243, 245 (2007).

Dean first contends the court miscalculated his income. The court adopted worksheets attributing $5,153 in monthly personal income and $5,896 in monthly business income to Dean based on previous earnings of D & B Alrdidge Enterprises. He contends, and Shelly does not dispute, that these figures are partly based on an accounting error that resulted in Dean's personal income in 2011 ($51,122) being

included, and therefore double counted, as income for D & B Enterprises. The record appears to support this contention. Accordingly, we remand for the court to address the accounting errors and, if necessary, recalculate Dean's income and support obligation.

Next, Dean contends the court abused its discretion in ordering him to pay Brianna's extracurricular activity expenses without first finding that such expenses were reasonable and necessary as required by RCW 26.19.080.[1] Shelly also does not dispute this contention, and a review of the record does not disclose the requisite findings. We therefore direct the court on remand to either enter the requisite findings or strike the provision ordering support for extracurricular activities.

Dean argues that even if the expenses were reasonable and necessary, the superior court abused its discretion in deviating upward with respect to extracurricular expenses. Under RCW 26.19.080(3), such expenses "shall be shared by the parents in the same proportion as the basic child support obligation. . . ." Thus, as Dean correctly points out, a court cannot deviate upward for such expenses unless it also deviates upward for the basic support obligation. In re Marriage of Yeamans, 117 Wn. App. 593,

---

[1] RCW 26.19.080 provides in part:
(3) Day care and special child rearing expenses, such as tuition and long-distance transportation costs to and from the parents for visitation purposes, are not included in the economic table. These expenses shall be shared by the parents in the same proportion as the basic child support obligation. . . .
(4) The court may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation.
(Emphasis added). In Yeamans, 117 Wn. App. at 600 (trial court must determine that extraordinary expenses are reasonable and necessary and then allocate them proportionally absent findings supporting a deviation); In re Marriage of McCausland, 129 Wn. App. 390, 411, 118 P.3d 944 (2005) ("[f]indings must support any requirement that a parent bear the full cost of any extraordinary expenses") reversed on other grounds, 159 Wn.2d 607 (2007).

-5-

601, 72 P.3d 775 (2003) ("It follows that if a court does not deviate from the basic support obligation, then it cannot deviate from the extraordinary expenses."); In re Paternity of Hewitt, 98 Wn. App. 85, 90, 988 P.2d 496 (1999) (court abused its discretion requiring payment of more than a proportionate share of travel expenses where the court did not deviate from the standard calculation of basic support); In re Marriage of Casey, 88 Wn. App. 662, 668, 967 P.2d 982 (1997) (no abuse of discretion apportioning all travel costs to father after deviation in basic support calculation making father responsible for 100 percent of basic support obligation). Although the superior court found a basis to deviate from the standard calculation, it deviated only with respect to support for extraordinary expenses. Unless the court on remand deviates from the basic child support obligation, it must assign extraordinary or extracurricular expenses in the same proportion as the basic support obligation and may not deviate therefrom.[2]

Dean next asserts that the superior court abused its discretion by including income from a business now owned by Dr. Sides in its calculation of his gross monthly income. He argues that inclusion of that income violated RCW 26.19.071(4)(a), which bars consideration of a new spouse's income in determining the basic support

---

[2] We note Shelly's argument that "[t]he conclusion Judge Fleck reached is that even if the child support worksheets may include income of his wife and somewhat imputed income to him, when she considered all of the factors, she deviated upward in her award of basic child support to the sum of $1,336." Resp't's Br. at 14. While the court's memorandum of decision suggests that the court might have had alternative bases for its inclusion of business income for Dean, i.e., actual projected business income and, alternatively, a deviation upward, the fact remains that the court never mentioned such a deviation and the support order only imposed a deviation with respect to extracurricular activities.

obligation, and RCW 26.16.010, which defines separate property. We decline to review this argument for two reasons.

First, the court's findings are insufficient for review. While the court found that Dean continues to have business income, there are no findings demonstrating its basis for attributing that income to him. The court made it clear that it was not imputing income to Dean and mentioned deviation only with respect to Brianna's extracurricular expenses. Given that Dean transferred his interest in the business to Dr. Sides, asserted the business income was now Dr. Sides' separate property, and claimed that he currently receives no salary for his contributions to the business, it was incumbent on the court to enter findings and conclusions supporting its attribution of business income to Dean.

In any event, review of this issue is premature since the court on remand may elect to deviate upward on the basic support obligation and may not attribute any business income to Dean. Likewise, given the potential outcomes on remand, review of Dean's arguments regarding the court's bases for deviating are premature.[3]

_____

[3] A deviation in this case appears to be consistent with In Matter of the Marriage of Glass, 67 Wn. App. 378, 388, 835 P.2d 1054 (1992) (in upholding trial court's consideration of parent's business relationship with his new wife in ordering a deviation from the standard schedule, this court stated, "It was appropriate for the court to consider the income and other financial benefits which [the father] enjoys by virtue of his co-ownership and comanagement of this business [with his wife], in determining whether to deviate from the schedule in imposing [his] child support obligation.") and Brandli v. Talley, 98 Wn. App. 521, 524-27, 991 P.2d 94 (1999) (in deciding whether to deviate from the basic support obligation, trial court could consider new spouse's "income, as well as wealth that income allowed the Brandli's to accumulate"). To the extent Dean claims these cases contravene the legislature's intent, he overlooks the presumption that decisions are consonant with legislative intent when, as here, the legislature has had ample opportunity to amend the statutes and has not done so. City of Federal Way v. Koenig, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009) ("This court

69436-7-I/8

Last, Dean contends this matter must be remanded to a different judge because the original judge granted an affidavit of prejudice as to Dean's petition to modify the parties' parenting plan. But the affidavit of prejudice was filed <u>after</u> the decision at issue here. Dean cites no authority, nor are we aware of any, indicating that the judge's recusal from Dean's modification action prohibits her from presiding over a remand of her earlier decision in Shelly's modification action. We decline to so hold.

Remanded for further proceedings consistent with this opinion.

WE CONCUR:

---

presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision.").